CHARLES LIGON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY. Appellant.

St. Louis Court of Appeals. Submitted on Briefs June 1, 1914. Opinion Filed June 20, 1914.

1. CARRIERS OF PASSENGERS: Interstate Commerce. The .transportation of a passenger from a point in the State of Arkansas to a point in this State is interstate transportation,

and, as such, is governed by the Interstate Commerce Act (3 U. S. Compiled Statutes (Ed. 1901), Title LVIa).

2. ————: ————: Unjust Discrimination. The Interstate Commerce Act (3 U. S. Compiled Statutes (Ed. 1901), Title LVIa) prohibiting unjust discrimination in rates, fares, etc., and undue preferences, applies to the transportation of passengers as well as to the carriage of property, and, under it, the agents of a railroad company have no authority to make or recognize any arrangement for the transportation of persons or property from a point in one State to a point in another, for other than the legal rate, and charging one person more or less than another for such transportation is unlawful.

3. ————: ————: ————. Under the Interstate Commerce Act (3 U. S. Compiled Statutes (Ed. 1901), Title LVIa), prohibiting unjust discrimination in rates, fares, etc., and undue preferences, a passenger has no right to be transported over a longer route, at the tariff rate applicable to a shorter route between two points located in different States, notwithstanding he may have had such an arrangement with the carrier's ticket agent.

4. ————: Action for Wrongful Ejection: Instructions: Submitting Question of Law to the Jury. In an action by a passenger against a carrier for ejection from a railroad train, it was shown that plaintiff insisted upon being carried to his destination upon the train from which he was ejected, whereas, by changing cars at a junction point, he could have been carried to his destination by a shorter route. The carrier defended on the theory that the fare paid by plaintiff merely entitled him to be carried over the shorter route, and that, on his refusal to pay the established fare for carriage over the longer route, it was justified in ejecting him. *Held*, that an instruction given for plaintiff, which submitted to the jury the question of whether plaintiff's ticket called for a continuous passage, was erroneous, for the reason that this was a question of law.

5. INSTRUCTIONS: Submitting Questions of Law to Jury. An instruction which submits a question of law to the jury is erroneous.

6. CARRIERS OF PASSENGERS: Action for Wrongful Ejection: Interstate Commerce. In an action by a passenger against a carrier for ejection from a railroad train, defended on the theory that the fare paid by plaintiff merely entitled him to transportation over a shorter route, and that defendant could not, under the Interstate Commerce Act (3 U. S. Compiled Statutes (Ed. 1901), Title LVIa), transport him on the train in question, because it went over a longer route, for which a higher fare was established, *held*, that it was error to instruct the jury that they could consider the

fact that, on other occasions, plaintiff had been transported over the longer route upon the same kind of a ticket that he had on the occasion in question, since the fact that the agents of defendant had violated the law on prior occasions did not justify plaintiff's demand that they violate it on this one.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*W. F. Evans* and *W. J. Orr* for appellant.

(1) Any agreement or arrangement the plaintiff had with the agent who sold the ticket which expressly or impliedly attempted to authorize the plaintiff to be carried for less than the regular interstate tariff rates between interstate points was void and gave plaintiff no right to be so carried. Sections 2, 3 and 10, Interstate Commerce Act; Railroad v. Motley, 219 U. S. 467; Dunne & Grace v. Railroad, 148 S. W. 997; Railroad v. Cotton Oil Co., 204 U. S. 426; Armour Packing Co. v. U. S., 209 U. S. 56; Adams Ex. Co. v. U. S, 212 U. S. 522; Railroad v. Albers Com. Co., 223 U. S. 317; Robinson v. Railroad, 222 U. S. 506; U. S. v. Miller, 223 U. S. 599; Hanley v. Railroad, 187 U. S. 614; Railroad v. Kirby, 225 U. S. 155; Railroad v. Mugg, 202 U. S. 242; Railroad v. Hefley, 158 U. S. 98.

*Virgil McKay* and *Shepard, Reeves & McKay* for respondent.

Passengers in purchasing tickets for passage over a railroad have a right to rely on the statements of the agents of the railroad company in all matters pertaining to the route by which they can go on the ticket purchased as well as all matters in regard to the trip contemplated. Short v. Railroad, 150 Mo. App. 359; Leyser v. Railroad, 138 Mo. App. 34; Ferguson v. Railroad, 144 Mo. App. 262.

REYNOLDS, P. J.—Plaintiff, intending to go from Leachville, Arkansas, to Gideon, Missouri, by way of the St. Louis & San Francisco Railroad, purchased a ticket, for which he paid $1.20. The distance from Leachville to Kennett is twenty-five miles, and from Kennett to Gideon it is about twenty-three miles, a total of forty-eight miles, and the legal rate being two and a half cents a mile, $1.20 was the legal amount over that route. The ticket which plaintiff purchased at Leachville was a local, single trip ticket, good for one first-class passage from Leachville, Arkansas, to Gideon, Missouri, good only on the date of sale as stamped on the back, no stop-over being allowed. It was stamped on the back "September 8, 1911," which was the date plaintiff purchased it at Leachville. When on the train and between Leachville and Kennett, plaintiff presented his ticket to the conductor, who punched it and handed it back to him. When the train reached Kennett plaintiff got off, went into the depot and found that the local train running direct from Kennett to Gideon, and which he had expected to catch, and by which his ticket was good, had left and that there would be no other until the following morning. So he again boarded the train upon which he had come from Leachville to Kennett, took his seat and when the conductor came along showed and tendered him his ticket. The conductor told him his ticket was not good on that train beyond Kennett, and that there was an additional fare by that train from Kennett to Gideon and requested plaintiff to pay this additional fare. Plaintiff refusing to do this the conductor told him he would have to get off the train, and stopping the train a short distance north of Kennett, plaintiff got off, walked back to Kennett and had to remain there all night, catching his train that went direct to Gideon the next day. Defendant's road branches off at Kennett; one branch going north direct to Gideon, twenty-three miles, the other east to Hayti, north to Brooks

Junction, south to Gideon, the distance from Leach-ville to Gideon by the route which the train took upon which plaintiff attempted to make the trip being 136 miles. It is made up thus: from Leachville to Ken-nett, twenty-five miles; Kennett east to Hayti, eighteen miles; Hayti north to Brooks Junction, forty-seven miles; Brooks Junction south to Gideon, forty-six miles. The legal fare of two and half cents a mile is $3.40. The conductor demanded from plaintiff, if he continued on that train and went by the route the train upon which he was a passenger took, the differ-ence between $1.20 and $3.40—$2.20. By the legal rate of fare we refer to that in evidence as approved by the Interstate Commerce Commission.

Plaintiff having been refused passage on this train unless he paid the extra fare, brought his action against defendant, demanding judgment for $200 actual dam-ages and $500 punitive or exemplary damages and costs.

The answer, after a general denial, avers that plaintiff had purchased a ticket entitling him to ride from Leachville to Gideon and the price paid was $1.20; that this was the legal interstate rate in force at the time between Leachville and Gideon by way of Kennett and Gibson, and not by way of the route men-tioned in plaintiff's petition and which plaintiff at-tempted to travel; that plaintiff, in violation of various sections of the Interstate Commerce Law, in force at the time, attempted to ride by way of a route not au-thorized by the tariff or under his ticket, and unlaw-fully and wrongfully refused to pay the legal rate in force and effect at the time between Leachville and Gideon by way of the route he attempted to travel; that by the act of Congress before referred to, it was unlawful for defendant to carry or agree to carry plain-tiff between Leachville and Gideon by way of the route mentioned in plaintiff's petition for the price and sum which plaintiff paid from Leachville to Gideon, and any

agreement or arrangement or understanding plaintiff may have had with any one to be transported by that way or route mentioned in his petition was in violation of the Interstate Commerce Law, was against public policy and absolutely void.

A general denial was filed by way of reply to this new matter.

The trial before the court and jury resulted in a verdict in favor of plaintiff, the jury in its verdict setting out that the jury assesses "his actual damages in the sum of fifty and no hundredths dollars, and we assess his exemplary, or punitive damages at the sum of —— dollars."

Interposing a motion for new trial and excepting to that being overruled, defendant has duly appealed.

At the close of plaintiff's testimony defendant interposed a demurrer which was overruled.

In an instruction given at the instance of plaintiff, the court told the jury in substance, that if they found that on the day named defendant was operating the railroad between Leachville in Arkansas and Gideon in Missouri; that plaintiff on that date purchased a ticket from the agent of defendant at Leachville "entitling him to continuous passage to the station of Gideon in the State of Missouri;" that defendant had two routes of railroad from Leachville to Gideon; that the only way to make a continuous passage without stopping was going by way of Hayti and from there to Brooks Junction and from Brooks Junction to Gideon; that plaintiff, prior to the time complained of had made the trip over defendant's railroad by the route above mentioned on a similar ticket to that purchased on that date; and if they believed and found from the evidence that on that date plaintiff was in possession of the ticket above mentioned and offered the ticket to the conductor of defendant's train for his transportation over the route; and if they believed and found from the evidence that the conductor of the defendant

refused to accept the ticket from plaintiff and refused to carry plaintiff to his destination on the ticket but stopped his train about a mile and a half east of Kennett and forced plaintiff to alight therefrom and treated him in an abusive, insulting, angry and threatening manner; and if the jury found from the evidence that the acts of defendant's conductor subjected plaintiff to pain, humiliation and mortification, plaintiff was entitled to recover therefor such damages as the jury might believe from the evidence will compensate plaintiff for such pain, humiliation and mortification so suffered. And if the jury found from the evidence that such acts were done by defendant's conductor with unnecessary violence, or with abusive or insulting language, "then the jury should further assess damages against the defendant in such sum as the jury may believe from the evidence will be a suitable punishment to defendant for such wrongful acts, and such damages should be separately stated in your verdict."

At the instance of defendant the court instructed the jury that they could not find a verdict for plaintiff under the pleadings and evidence on account of the place where plaintiff was put off of defendant's train as there was no evidence in the cause of the failure of defendant to put plaintiff off of its train at some usual stopping place or near some dwelling house.

At the instance of defendant the court also instructed the jury that under the terms of the ticket issued and delivered to plaintiff by defendant from Leachville to Gideon over defendant's railroad and offered in evidence in the case by plaintiff, plaintiff had the whole of the next day after the ticket was issued, namely, the whole of September 9th, in which to complete his trip from Leachville to Gideon.

Defendant also asked several instructions which were refused. One of these was to the effect that under the Interstate Commerce Act, which was in force

184 Mo. App.—13

on the 8th of September, 1911, the conductor of defendant was not allowed to carry plaintiff between the stations of Leachville and Gideon in Missouri for less than the regular rate in force at that time for the actual number of miles between said stations by the route which plaintiff selected, and any promise of defendant's agent for less rate was unlawful and not enforcible.

It also asked an instruction to the effect that if they found from the evidence that plaintiff purchased the ticket from defendant's agent at Leachville in Arkansas and paid therefor the sum of $1.20, and the jury should further find that the sum was the legal fare from Leachville to Gideon by way of the stations of Kennett and Gibson to Gideon, and should further find that the amount paid was less than the regular fare from Leachville to Gideon by way of Hayti and Brooks Junction to Gideon, the route that plaintiff was demanding to be carried, then plaintiff was not entitled to be carried on the ticket by way of the latter route, and if the jury found that plaintiff refused to pay any other fare than represented in said ticket by way of the latter route, the route that plaintiff was demanding to be carried, then the conductor had no legal right to accept that ticket, or permit plaintiff to ride thereon, and had the right to eject plaintiff from the train, using only such force as was necessary to accomplish that purpose.

The judgment in this case cannot be sustained.

The question of punitive damages is out of the case by the verdict of the jury; so also is the question of landing plaintiff at the wrong place. There was no force used in having plaintiff leave the train, and no evidence of any abusive language. All that occurred was that the conductor told plaintiff he could not continue on that train to Gideon unless he paid the extra fare, stopped the train, put his hand on plaintiff's shoulder and escorted him to the platform. The only

other point in the case, therefore, turns on the question of the legal rate; whether plaintiff, refusing to pay it, the conductor had a right to refuse to carry him unless he did pay, and a right to compel plaintiff to leave the car and train.

Beyond question this transportation is interstate transportation and the Interstate Commerce Act (3 Compiled Statutes of the United States (Ed. 1901), Title LVIa), applies to it. [Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617.]

The second section of that act provides that if any common carrier, subject to the provisions of the act shall directly or indirectly ''by any special rate, rebate, drawback, or other device, charge, demand, collect or receive, from any person or persons a greater or a less compensation for any service rendered, or to be rendered, in the transportation of passengers, or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.''

The third section, among other things, prohibits undue preferences. The tenth section provides penalties for any violation of the act.

By numerous decisions of the Supreme Court of the United States this act of Congress has been applied to cases practically like the one at bar. It is true that most of them relate to carriage of property, hence learned counsel for respondent argue that they are not applicable. But the law governs the transportation of persons as well as property. No agent of any road subject to the provisions of the act, has any authority to make or recognize any arrangement for transportation of persons or property from a point

in one State to another for other than the legal rate. Charging one person more or less than another is not lawful. [See, among other cases Gulf, Colorado & Santa Fe Ry. Co. v. Hefley, 158 U. S. 98; Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467; Kansas City Southern Ry. Co. v. Albers Commission Co., 223 U. S. 573; Chicago & A. R. Co. v. Kirby, 225 U. S. 155.]

The decision in the latter case is particularly in point here, the shipper claiming that he was entitled to a special routing of certain horses that would insure quicker transportation from the point of shipment to point of destination than if going by the regular route. Mr. Justice LURTON, delivering the opinion of the court, said (l. c. 166):

"The broad purpose of the commerce act was to compel the establishment of reasonable rates and the uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. To guarantee a particular connection and transportion by a particular train was to give an advantage or preference not open to all, and not provided for in the published tariffs."

This same view of the law has been recognized in many decisions of our Supreme Court and of this court, as see Dunne & Grace v. St. Louis & Southwestern Ry. Co., 166 Mo. App. 372, 148 S. W. 997. It follows that whatever arrangement plaintiff may have had with the ticket agent, he had no right to be transported over the longer route at the tariff rate applicable to the shorter. If he travelled by the longer, he could not do so without paying fare applicable to that route and at the time chargeable to all persons travelling by that route, and if he attempted to do so, the conductor had not only the right but it was his duty to refuse to carry him.

The jury by their verdict have eliminated any question of punitive damages in this case and the court by its instruction took away from the jury the question of plaintiff having landed at an improper place. The refusal of the conductor to allow him to remain on that train was lawful and plaintiff has no right of recovery for that.

The instruction given by the court at the instance of plaintiff is erroneous and should not have been given. Among other errors it improperly submitted as a question of law to the jury the question as to whether the ticket called for a continuous passage. The court, in a measure, corrected this by an instruction given at the instance of defendant, to the effect that the ticket was good for passage on the following day on a train going to the same destination. This instruction is further erroneous in telling the jury that they should take into consideration the fact that on previous occasions and at prior times plaintiff had made the trip over defendant's railroad by this long route on a similar ticket to the one purchased on this occasion and without paying more fare. That is error. The fact that the officers and agents of defendant had violated and disregarded the law on prior occasions is no justification whatever for the plaintiff in this case.

Holding that on the facts here found plaintiff cannot recover, the judgment of the circuit court must be and is reversed. *Nortoni* and *Allen, JJ.,* concur.