# Southern Railway Co. v. Rowe.

### Breach of Contract to Transport.

(Decided June 8, 1915. Rehearing denied December 30, 1916.
73 South. 634.)

1. Carriers; Passengers; Telegraphed Tickets; Failure to Deliver; Complaint.—A complaint against a railroad seeking damages for a failure to promptly deliver a telegraphed ticket was not demurrable as showing that the agreement to telegraph the ticket was ultra vires and void, or a form of undue discrimination in that no more than the regular fare was paid, as the care and expense necessary to telegraph the transportation was merely incidental and to be attributed to defendant's promotion of business or service.

2. Same; Damages; Mental Anguish.—Where the railway agent knew that the telegraphed ticket was sent by the sender to her husband who was seriously ill in order that the sender might have him with her when or before he died, damages for mental anguish were recoverable for a failure promptly to deliver such ticket; such damages being within the contemplation of the contracting parties.

[Southern Railway Co. v. Rowe.]

3. **Contract; Breach; Mental Suffering; Evidence.**—Mental suffering need not positively be proven but may be inferred from the circumstances, including the relation of the parties, as where there had been a failure to deliver a telegraphed ticket for transportation home of plaintiff's dying husband.

4. **Carriers; Passengers; Railroad Agent; Authority.**—Secret instructions or limitations upon the authority of the railroad's general agent are not available to exempt the railroad from obligations of engagements made by him within the range of his ostensible authority, such as to telegraph transportation to a person or to a connecting railway line.

5. **Same; Telegraphed Ticket; Failure to Deliver; Damages.**—Where the action was for failure to promptly deliver transportation telegraphed by plaintiff to her dying husband the element of damage was the excess over the ticket price of the expense of the transportation of such husband's remains; there being evidence that the ticket agent knew such death was imminent and such damages being within the contemplation of the parties.

6. **Same; Evidence.**—While it was error to admit testimony of a witness that he caused his stenographer to inquire at different railroad offices whether the transportation had arrived, no prejudice resulted therefrom to the defendant where it appeared that the ticket was delivered four days after it was contracted for.

7. **Evidence; Documentary; Copies.**—Where the action was for damages for breach of a contract to promptly deliver telegraphed ticket to plaintiff's sick husband it was not error to admit in evidence correct copy of the telegram sent by the Associated Charities where the husband was, stating that he was ill and destitute, since the contents of the telegram was collateral to the issues made and the original telegram was not essential to the proper proof of such contents.

APPEAL from Cherokee Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Lora Rowe against the Southern Railway Company for breach of contract. Judgment for plaintiff, and defendant appeals. Affirmed.

The following is the complaint:

Count 1. Plaintiff claims of defendant corporation the sum of $2,950 as damages for the breach of a contract made by and between plaintiff and defendant on, to-wit, January 16, 1914, by the terms of which defendant contracted to send by telegram transportation over its line of road and connecting lines, to the husband of plaintiff at Colorado Springs, Colo., for the purpose of furnishing transportation for plaintiff's said husband, Charlie Rowe, from Colorado Springs, Colo., over defendant's railroad and connecting lines, to Rock Run Station, Ala. Plaintiff avers that defendant was at the time stated a common carrier and engaged in the business of transporting passengers for hire over its line of railroad which runs to Rock Run Station, Ala. Plaintiff avers that said contract was made by her, acting

by and through her agent, one Frank Mitchell; that, at the time said contract was made by her with the defendant, her said husband was very ill in Colorado Springs, Colo., and plaintiff, by and through her said agent, informed defendant at the time said contract was made that her husband was seriously ill in said Colorado Springs, and that she sent said transportation to him by telegraph in order that same might reach him quickly so that he could leave Colorado Springs promptly, and arrive at Rock Run Station, Ala., before he died; and that plaintiff, as his wife, was very anxious for her husband to get back to said Rock Run Station as soon as possible that she might have him with her before he died. Plaintiff avers that by and through her said agent, Frank Mitchell, she paid defendant the sum of $34.95 for said transportation by telegraph as aforesaid, and that defendant contracted with her as stated herein by and through one C. S. Burge, its agent and servant at Rock Run Station, Ala., at said time. Plaintiff avers that defendant, with knowledge of the situation and condition as aforesaid, contracted as aforesaid to send said transportation to plaintiff's husband by telegraph to provide for his return as quickly as possible to Rock Run Station, Ala., so that plaintiff might have him with her before he died. Plaintiff avers that defendant broke said contract, in this, that it did not send such transportation to her husband at Colorado Springs, Colo., within a reasonable time, and that said transportation was not delivered by defendant in Colorado Springs until, to-wit, January 21, 1914, and after the death of plaintiff's said husband. Plaintiff avers that if said transportation had been delivered to her husband in Colorado Springs, Colo., within a reasonable time, her husband could have and would have returned to Rock Run Station, Ala., before his death, and plaintiff could have had her said husband with her before his death, and could have given him her care and nursing, and have had the privilege and comfort of being with him during the last hours of his illness. Plaintiff avers that, as a proximate consequence of defendant's said breach of the contract, her said husband was prevented from arriving at Rock Run Station, Ala., during his lifetime, and plaintiff was prevented from having him with her during the last hours of his illness before his death, thereby causing plaintiff to suffer great mental pain and anguish, to her damage.

2. Same as 1.

3. Same as 1, with the following addition: Plaintiff further avers that, as a proximate consequence of the breach of defend-

ant's said contract, she was put to a greater expense than the cost of said transportation or ticket for her husband from Colorado Springs, Colo., to Rock Run Station, Ala., to-wit, an expense of $135 incurred in obtaining the transportation or shipment of the remains of her said husband after his said death from said Colorado Springs, to Rock Run Station; and plaintiff claims in this case as a part of the total sum herein claimed the difference between the cost of said ticket, to-wit, $34.95, and said expense of $135 incurred by her as aforesaid.

The demurrers raise the question that it does not appear that defendant was engaged in the business of sending messages by telegraph, nor does it appear that defendant had any telegraph line or any other means of sending telegrams from Rock Run Station to Colorado Springs. For aught that appears, the delay complained of was caused by the agent transmitting the telegram therein referred to. It appears that the contract averred of sending a ticket by telegraph is not the business of a common carrier and is ultra vires and void. The other demurrers raise the question of the recovery of mental anguish in such case, and that the difference in the ticket and in the expense of shipping the body was not shown to be the proximate result of the failure to send transportation. The other matters sufficiently appear.

HOOD & MURPHREE, for appellant. HUGH WHITE, for appellee.

MCCLELLAN, J.—The appellee instituted this action, for damages for breach of a contract, against the appellant. The defendant was a common carrier of passengers for hire between Birmingham and Anniston and Rock Run Station, in this state. Connecting railway lines, recognized by the defendant, admitted of practically continuous transportation of passengers from Colorado Springs, Colo., to Birmingham, Ala. The issues submitted to the jury were those made by general traverse of the averments of counts 1, 2, and 3 of the complaint. There was judgment for the plaintiff for $550.

The substance of the contract declared on is that the defendant, through its agent at Rock Run Station, undertook and engaged on, to-wit, January 16, 1914, to telegraph transportation, over its line and connecting lines, to plaintiff's husband at

Colorado Springs, Colo., for the purpose of furnishing transportation for the husband from Colorado Springs to Rock Run Station; the plaintiff through her authorized agent then paying to the agent of the defendant the sum of $34.95 "for said transportation and the transmission thereof to her husband by telegraph;" the agent of the defendant being then advised that the husband was seriously ill at Colorado Springs and that the plaintiff desired the transportation sent him quickly that he might, as he would have done, return to his home before he died. The breach averred is that the defendant did not send the transportation within a reasonable time, it not being delivered until, to-wit, January 21, 1914, after the husband had died. In the first and second counts, the damages claimed are for mental distress suffered by the plaintiff because she was deprived of the privilege, comfort, and consolation of having the husband with her during his last hours and of ministering to him at that time. The third count claims, in addition, the difference between $135 required to transport the remains of the husband from Colorado Springs to Rock Run Station, and the sum of $34.95 paid to the agent of the defendant for a ticket for him from Colorado Springs to Rock Run Station.

(1) The legal effect of the contract was that, having received at its office at Rock Run Station the price of a ticket for the transportation of a passenger from Colorado Springs to Rock Run Station—to reach which the routing should be over a part of defendant's line, thus entitling it to the benefit of a proportion of the aggregate railroad fare or transportation from Colorado Springs to Rock Run Station—the defendant obligated itself to transmit, by telegraph, to plaintiff's husband at Colorado Springs the transportation stated. Being a common carrier of passengers for hire to Rock Run Station, it cannot be affirmed as a matter of law that the complaint shows defendant's want of rightful power or authority to so obligate itself in the premises. The necessary implication from the averments of the complaint is that an appropriate passenger ticket could validly issue, out of the hand of the initial carrier, at Colorado Springs calling for transportation from that point to Rock Run Station; and, if so, the averments of the counts cannot possibly be interpreted as denying to the defendant the possession of the power or authority to receive the fare at the point of contemplated destination on its line and to obligate itself to communicate the fact of such pay-

ment to the initial carrier at Colorado Springs and to arrange for the issuance of the transportation by that carrier to the intended passenger. The process contemplated by the contract set forth in the counts was entirely consistent with the powers and authority normally attributable to the general service of common carriers of passengers for hire. There is nothing in the counts to indicate a violation in this contract of any provision of the Interstate Commerce Act or of any regulation made, by authority, under that act. The contract averred did not, in any of its phases, touch or trench upon the established railway fare between Colorado Springs and Rock Run. No rebate, preference or other form of undue discrimination (*N. Y., New Haven R. R. v. Interstate Com. Com.*, 200 U. S. 361, 391, 26 Sup. Ct. 272, 50 L. Ed. 515) was or could be effected by the contract averred in the complaint. The mere fact that the plaintiff paid to the defendant's agent only the railway fare between Colorado Springs and Rock Run, and did not include in the payment the cost of a telegram or telegrams to accomplish the "quick" delivery of the transportation to the sick husband, did not bring the contract averred into conflict with the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379). The expense and care necessary to "telegraph the transportation," and to make it available, to the husband, was a mere incidental expense and cost to be attributed to the defendant's promotion of its own business and service. In any event, the plaintiff delivered to the defendant's agent a sum equal to the price of the transportation, no more and no less, from Colorado Springs to Rock Run.

(2, 3) The special circumstances under and with reference to which the plaintiff sought to have the transportation telegraphed to her husband—special circumstances communicated, it was averred, to the defendant's agent—brought within the contemplation of the contracting parties the fact that the husband was seriously ill; that the plaintiff entertained a natural desire to see her husband while yet he lived; that her efforts to afford him the means to return home before it was too late were inspired by that desire; and that a consequence of the failure to effect, promptly, the delivery of the transportation to him, would probably be to afflict her with the mental distress naturally to be expected to result from such deprivation under the circumstances indicated.—*W. U. Tel. Co. v. Crumpton*, 138 Ala. 632, 643, 644, 36 South. 517; *W. U. Tel. Co. v. Ayers*, 131 Ala. 391, 393, 31

South. 78, 90 Am. St. Rep. 92. In actions ex contractu damages for mental suffering entailed, within the law's prescription, by the breach of a contract, are actual damages and are recoverable. —*W. U. Tel. Co. v. Rowell,* 153 Ala. 295, 309, 45 South. 73; *W. U. Tel. Co. v. Haley,* 143 Ala. 586, 591, 39 South. 386. Such suffering need not be positively proven, but may be inferred by the jury from the circumstances, including the relation.—*W. U. Tel. Co. v. McMorris,* 158 Ala. 563, 573, 48 South. 349, 132 Am. St. Rep. 46; *W. U. Tel. Co. v. Cleveland,* 169 Ala. 131, 138, 53 South. 80, Ann. Cas. 1912B, 534.

It results from these considerations that the first, second, and third counts of the complaint were not subject to the demurrers interposed.

(4, 5) It is insisted that the defendant's agent (Burge) at Rock Run was without authority to bind the defendant as the contract alleged in the complaint purported to do. There was, at the very least, testimony tending to show that Burge was the defendant's general agent at its Rock Run Station.—*Gibson v. Snow Hdw. Co.,* 94 Ala. 346, 352, 353, 10 South. 304; *Simpson v. Harris,* 174 Ala. 430, 434, 56 South. 968. If Burge was the defendant's general agent at that place, then secret instructions or limitations upon his authority not communicated to persons with whom he dealt as the agent of the defendant, were not available to exempt the defendant from the binding quality and consequences of engagements made by Burge within the range of his obtensible authority and powers.—*Syndicate Ins. Co. v. Catchings,* 104 Ala. 176, 187, 16 South. 46; *Simpson v. Harris,* 174 Ala. 430, 434, 56 South. 968. The defendant adduced evidence tending to show that Burge was without authority to engage for the defendant to "telegraph transportation" directly to the plaintiff's husband or to the representatives of the common carrier at Colorado Springs. The practice "of railroads" to quote the defendant's district passenger agent, "in transmitting prepaid tickets over foreign connecting lines," was recognized by the defendant; and the chief, if not only, contention made for the defendant was with respect to the method, through agents of superior authority, whereby the "prepaid ticket" could be made available to the intended passenger. On the record before us, it certainly cannot be said as a matter of law that the special limitations on Burge's authority—whereby he was restricted to the method indicated to give effect to the prepayment made to him for

the ticket—were known to the plaintiff or her agent Mitchell, or bound her in any way. The trial court did not err in refusing the general affirmative charge to defendant; nor in declining to instruct the jury, at defendant's request, that Burge was the agent of the plaintiff in procuring the delivery of a ticket to the husband; or that Burge was not required to telegraph the transportation direct to the initial carrier at Colorado Springs for delivery to the husband.    There was evidence tending to show a most unreasonable delay in effecting the delivery of the "prepaid ticket," in view of the circumstances of urgency which the testimony for the plaintiff tended to show were brought to the knowledge of the defendant's agent at Rock Run.    By special charges requested for the defendant and by rulings made on the admission or rejection of evidence, questions touching the elements of recoverable damages are presented for review.    It is entirely clear that the jury were, under the evidence, authorized to award damages for mental distress suffered by the plaintiff; provided, of course, the jury found that the contract averred was breached as charged—a finding invited by tendencies of the evidence.    It is equally as clear that, if the plaintiff was found by the jury to be entitled to recover by reason of the breach of the contract effected by the unreasonable delay in the delivery of the "prepaid ticket," and if that breach served to deny the opportunity (of which the husband would and could have availed) of the husband's return to the home before he died, an element of the recoverable damages was the difference between the amount paid to Burge at Rock Run ($34.95) as the price of the passenger ticket, and the amount necessary to defray the expenses of the transportation of his remains to Rock Run after his death at Colorado Springs; the difference between the cost of transporting the husband while alive and after his death, the sum paid at Rock Run having been used to contribute to the expense of the return of his remains.    From the evidence tending to sustain the plaintiff's theory, it was open to the jury to find that the special circumstances brought to the knowledge of the defendant's agent at Rock Run, at the time the money was delivered to Burge to effect the delivery to the husband of the ticket from Colorado Springs to Rock Run, served to advise the defendant that the husband was very ill; that he was anxious to get home before death; that the wife (plaintiff) was also very solicitous for his return while life yet lasted; that celerity was essential to the

purposes and desires of both the husband and plaintiff; that the husband's home, from which he had but recently gone to Colorado in search of health, was in that neighborhood; and that the husband's death in a short time was anticipated. Under these circumstances, it was most natural, to all concerned and advised of the situation, to apprehend that, if the husband did not return to his home while yet in life, his remains would be brought home for interment. The parties to the contract must be held to have contemplated the normal, the natural instincts, sentiments, and purposes which, under the known circumstances, ordinary mortals are presumed, as of common knowledge, to have and to entertain.—*Daugherty v. Amer. Tel. Co.*, 75 Ala. 168, 51 Am. Rep. 435; *W. U. Tel. Co. v. Crumpton, supra.*

(6, 7) There are over 30 errors assigned upon rulings on the admission or rejection of evidence. All of them, urged in brief for appellant, have been considered. Reversible error cannot be predicated of them. To treat each of them in this opinion would extend it insufferably. Of the issues before the jury were these: Whether the husband would have returned home at once upon receipt of the transportation; and, if so, was he physically able to make the trip home, if the transportation had been transmitted to him as promptly as the obligation of the contract the plaintiff asserted required? If the jury accepted the plaintiff's theory of the obligations assumed by the defendant through its agent, every fact and circumstance reasonably calculated to disclose the desire and determination and physical ability of the husband to undertake and to make the journey to his home, if the transportation had been transmitted and made available to him with the telegraphic celerity the contract promised. The husband's age, and the fact that he was married and was a parent, were circumstances reasonably calculated to disclose, if not emphasize, his entertainment of the normal, naturally anticipated desire to be at home, among those near and dear, when death approached. The physical condition of the husband a few days before, on and after January 16, 1914, was a subject of inquiry under the averments of the complaint. If, from weakness or impaired will power, he could not or would not have undertaken the journey home, between the time the plaintiff claims the transportation should have been delivered to him and the time when, had he seasonably started, he could have arrived home before he died, was a question for jury decision under the conflicting tend-

encies of the evidence; and, if either of these issues had been resolved against the plaintiff, she would not have been entitled to recover any actual damages for the breach alleged. The court should not have permitted the introduction by the plaintiff of testimony of the witness Worcester, to the effect that he caused his stenographer to inquire at different railroad offices in Colorado Springs whether transportation for the husband had arrived; but no prejudice resulted to defendant from this ruling, because it was shown without conflict that the telegram transmitting the transportation reached Colorado Springs at 11:07 a. m., January 21, 1914, approximately four days after the contract declared on was alleged to have been made at Rock Run, Ala. There was evidence to the effect that plaintiff's husband died on the morning of January 21, 1914.

(8) There was no error in admitting in evidence a correct copy of the telegram, dated January 13-14, 1914, sent by the representative of the Associated Charities at Colorado Springs to Pope & Stephenson. It appears to have been sent as the result of a visit of plaintiff's husband to the office of that organization. It read: "Charles Rowe here very ill and destitute, unable to take care of himself wishes to go to mother can the people who paid transportation here send money for his return to Alabama wire immediately what can be done."

The telegram later reached the addresses by mail from Gadsden; and the witness Mitchell, agent for the plaintiff, testified that a copy of this telegram was shown by him to the defendant's agent at Rock Run on the occasion the contract declared on was alleged to have been made with that agent. The contents of the telegram were collateral, incidental to the issues made by the averments of the complaint. In such circumstances, the original telegram was not essential to the proper proof of the contents thereof.—*Pollack v. Gunter*, 162 Ala. 317, 322, 50 South. 155; *Bulger v. Ross*, 98 Ala. 267, 273, 12 South. 803. The fact that the money delivered by Mitchell to defendant's agent at Rock Run was donated by Mitchell and other friends was brought out by the defendant on the cross-examination of Mitchell. In any event, this entirely justified the plaintiff in further pursuing the subject with the view to knowing that the donation was made to the wife for the purpose of bringing about the return of the sick husband.

[Jones v. Lanier.]

No reversible error can be predicated of the several rulings of the court relating to the opinion evidence. The applicable rules are restated in *Pullman Co. v. Meyer*, 195 Ala. 397, 70 South. 763, 765.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.