## ALABAMA GREAT SOUTHERN R. CO. et al. v. CONNER.

### 6 Div. 330.

Supreme Court of Alabama.

Oct. 5, 1933.

Rehearing Denied Dec. 1, 1933.

Stokely, Scrivner, Dominick & Smith, and W. H. Sadler, Jr., all of Birmingham, for appellants.

Horace C. Wilkinson, of Birmingham, for appellee.

GARDNER, Justice.

Count G, upon which the cause was tried, differing from the complaint considered on former appeal (Conner v. Central of Georgia R. Co., 221 Ala. 358, 128 So. 789), seeks recovery for a breach of a special contract in effect guaranteeing to plaintiff that connection would be made between the trains at Birmingham on her interstate journey from Alexander City, Ala., to Amite, La. The validity of this contract is challenged as violative of the federal statute declaring it unlawful for any common carrier "to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever." 49 USCA § 3, par. 1.

It appears without dispute that plaintiff paid nothing other than what the general public would have paid to secure defendant's usual transportation, duties, and responsibilities which they owed as common carrier of passengers to passengers traveling over their line. As to the general public, defendant, as a common carrier of passengers, in relation to the matter of making the connection at Birmingham, owed the duty of due care, and could be made to respond in damages for a failure in that regard only upon the theory of negligence (Southern Rwy. Co. v. Miller, 129 Ky. 98, 110 S. W. 351; Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; 6 Cyc. 587), and varying excuses for unreasonable delays have been accepted by the courts as presenting a proper defense based thereon (2 Hutchinson on Carriers [3d Ed.] §§ 654–659).

The contract on which plaintiff relies brushes aside any excuse for delay, and calls for a guaranteed connection, though for like service and compensation the general public have no such guaranty, but for any compensation for unreasonable delay must look to the rule of due care and the consequent defenses available thereunder.

The question for determination is whether or not plaintiff's contract constitutes "any undue or unreasonable preference or advantage" within the meaning of the above-noted federal statute. If so, it is void and unenforceable. Authoritative answer to this inquiry is to be found in the federal Supreme Court decisions, binding and conclusive as to the proper interpretation of this statute.

In principle we construe the decision of the United States Supreme Court in Chicago & Alton Railroad Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 650, 56 L. Ed. 1033, Ann. Cas. 1914A, 501, as conclusive here adversely to plaintiff's cause. True, the Kirby Case dealt with the shipment of freight, but the statute concerns passengers as well as freight traffic (Ligon v. St. Louis & San Francisco R. Co., 184 Mo. App. 187, 168 S. W. 647), and its underlying principle is as applicable to the one as the other. The shipment in the Kirby Case was a carload of high-grade horses for sale in New York City at a given time, and the defendant railroad had by special contract agreed with the plaintiff to expedite the shipment and guarantee a connection with what was known as the "Horse Special" over another road, and thus reach New York at the appointed time. The defendant missed the connection, and suit for breach of this special contract followed. Relief was denied plaintiff upon the theory such special agreement was an undue or unreasonable prefer-

ence or advantage and within the prohibition of the above-noted statute. The following extracts from the opinion are pertinent here:

"The implied agreement of a common carrier is to carry safely and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, or to make a particular connection, or to carry by a particular train. The railroad company, by its contract, became liable for the consequence of a failure to transport according to its terms. Evidence of diligence would not excuse. If the action had been for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract.

"For such a special service and higher responsibility it might clearly exact a higher rate. But to do so it must make and publish a rate open to all. This was not done.

"The shipper, it is also plain, was contracting for an advantage which was not extended to all others, both in the undertaking to carry so as to give him a particular expedited service, and a remedy for delay not due to negligence.

"An advantage accorded by special agreement which affects the value of the service to the shipper and its costs to the carrier should be published in the tariffs; and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage, in that it is not one open to all others in the same situation. * * *

"The broad purpose of the commerce act was to compel the establishment of reasonable rates and the uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. To guarantee a particular connection and transportation by a particular train was to give an advantage or preference not open to all, and not provided for in the published tariffs. The general scope and purpose of the act is so clearly pointed out in New York, N. H. & H. Railroad Co. v. Interstate Commerce Com., 200 U. S. 361, 391, 26 S. Ct. 272, 50 L. Ed. 515, 521, and in Texas & P. Railroad Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, as to need no reiteration.

"That the defendant in error did not see and did not know that the published rates and schedules made no provision for the service he contracted for is no defense. For the purposes of the present question he is presumed to have known. The rates were published and accessible, and, however difficult to understand, he must be taken to have contracted for an advantage not open to others."

This language is applicable to the instant case. As stated in the opinion, the broad purpose of the act was to compel the establishment of reasonable rates and their uniform application, and to "guarantee a particular connection and transportation by a particular train" is to give an advantage or preference not open to all and not provided for in the published tariffs. It is an undue advantage and within the influence of the broad scope of the statute.

As we read the brief of counsel for plaintiff, the points of differentiation of the Kirby Case, supra, from the one before us rest largely upon the difference in the traffic, one concerning freight and the other passenger service. But we have noted above that in principle there is no such distinction in the statute.

Plaintiff here contracted for an expedited service, that is, for a guaranty of connection, while the general public, paying the same rate, received no such advantage and had no recourse for damages for unreasonable delay save a reliance upon a want of due care—the establishment of negligence on the part of the carrier. Unless a distinction is to be made in the character of traffic, we are persuaded the Kirby Case, supra, is here controlling, and we see no foundation for such distinction.

In Louisville & Nashville R. R. Co. v. Jones, 6 Ala. App. 617, 60 So. 945, the Court of Appeals of this state gave application to the principle of the Kirby Case, supra, though a shipment of freight was likewise then involved. And the court in Ligon v. St. L. & S. F. R. R. Co., supra, gave the Kirby Case application, where was involved passenger transportation. And in Gerardy v. L. & N. R. R. Co., 52 Misc. 466, 102 N. Y. S. 548, the holding was that the ticket agent had no authority to make a special contract for a passenger.

The cases of Hayes v. Wabash R. Co., 163 Mich. 174, 128 N. W. 217, 31 L. R. A. (N. S.) 229, and Foster v. Cleveland, C., C. & St. L. Rwy. Co. (C. C.) 56 F. 434, relied upon by plaintiff, were decided prior to the Kirby Case, supra, and cannot be considered as authoritative. And what was said in Harmon v. Barber (C. C. A.) 247 F. 1, L. R. A. 1918F, 428, in this connection appears to have been unnecessary to a decision of the cause, and the opinion makes no reference to the Kirby Case. Nor do we find anything in Interstate Commerce Commission v. Baltimore & Ohio Railway Co., 145 U. S. 264, 12 S. Ct. 844, 36 L. Ed. 699, that militates against the conclusion here reached. That case merely dealt

with the matter of classification for rates and service, and is wholly dissimilar to the situation here disclosed.

And we may add that the case of Southern Rwy. Co. v. Rowe, 198 Ala. 353, 73 So. 634, first called to our attention on application for rehearing, is likewise inapplicable. No special and unusual contract was there involved, but only the purchase by plaintiff of a prepaid ticket over other and connecting lines, a practice recognized by the defendant railroad, and which the court held was entirely consistent with the power and authority normally attributable to the general service of common carriers of passengers for hire.

And the care and expense necessary to telegraph the transportation to make it available to plaintiff's husband was held to be an incidental cost to be attributed to the defendant's promotion of its own business. It is apparent quite a different situation is here presented.

Giving application to the reasoning of the opinion in the Kirby Case, supra, we cannot escape the conclusion that plaintiff's special contract was an undue preference or advantage prohibited by the federal statute, and therefore unenforceable.

It results that the defendant was due the affirmative charge, as requested, and for its refusal the judgment will be reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.