# Simpson & Harper *v.* Harris & Scrandrett.

## *Injunction.*

(Decided November 29, 1911. 56 South. 968.)

1. *Principal and Agent; Authority; Presumption.*—Where a business is conducted in Alabama by a non-resident who visits his place of business only once every 30 or 60 days, although constantly engaged in the business of buying and selling lumber, the general manager of such business has authority to contract for the cutting and sawing of timber into lumber under the general rule that a general agent is employed to transact all the business of his principal with powers prima facie co-extensive with the business, which powers cannot be limited by secret instructions, in the absence of limitations on his authority known to the person dealing.

2. *Fraud; Statute; Contracts Affecting; Sale of Timber.*—A contract to cut timber and saw it into lumber and sell the lumber or deliver it to the owner, is not a contract for the sale of lands or any interest therein within the statute of frauds (Subdivision 5, Code 1907, section 4289), nor is it within the provisions of section 3355, Code 1907.

3. *Logs and Logging; Contracts; Performance.*—A contract to cut timber and saw the same into lumber at a designated mill is not breached by the mere fact that the mill was burned and rebuilt one-half mile distant from the old site, in such a manner as to justify a rescission of the contract.

APPEAL from Geneva Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Simpson & Harper against Harris & Scran-
drett for an injunction to restrain the cutting of timber
on certain lands. From a decree for defendants, com-
plainants appeal. Affirmed.

The averments of the bill are sufficiently shown by
the opinion. The contract referred to was between
Simpson & Harper and Harris & Scrandrett, to cut
their entire tract of timber at and near Chancellor,
Ala., the same to be cut into such bills of lumber,
boards, or decking as seems fit to Harris & Scrandrett,
with agreement by Harris & Scrandrett that all
boards and decking cut from this timber shall
be shipped to Simpson & Harper; such other ma-
terial as is cut to be shipped to any customer
that Harris & Scrandrett may have, but Simp-
son & Harper not to be responsible for the payment of
such lumber. All timber on this tract to be cut at mill
known as Waddell mill, and at no other, unless agreed
to later by all the parties. A careful tally of all lumber
cut from this tract or tracts of timber to be carefully
checked by a joint checker furnished by the parties here-
to—such checker and checking boards and decking
shipped to Samson to check scant or short lumber into
what it will make in planing mill stock. Simpson &
Harper to pay Harris & Scrandrett $7 on boards and
$7.50 on decking per 1,000 feet board measure, f. o. b.
cars Chancellor, Ala., and Harris & Scrandrett to pay
Simpson & Harper $2 per 1,000 feet board measure for
all lumber shipped or otherwise disposed of to Simpson
& Harper. Then follows agreement as to cutting with-
out waste, and to complete a tract when cutting is
started, and as to the dimensions of the timber to be
cut. This contract was signed, "Carl Saye, Manager
for Simpson & Harper," and "L. E. Harris, for Harris
& Scrandrett," and was recorded the 16th day of July,

1907, having been signed July 15, 1907. Another contract of later date, between Simpson and Abbott & Alston, is shown, signed in the same manner.

W. O. MULKEY, for appellant. It is not shown anywhere that the general manager had written authority or power of attorney to make a conveyance of real estate, and a sale of growing or standing timber is a conveyance of realty.—*Miller-Brent L. Co. v. Davis,* 151 Ala. 580. It is at least an attempt to dispose of real estate which may be revoked at pleasure.—*Riddle v. Brown,* 20 Ala. 412; *Bingham v. Heflin,* 56 Ala. 566. Counsel discuss the authority of the general manager as an agent to bind the principal by any such contract, but cites no authority in support of his contention.

C. D. CARMICHAEL, for appellee. The contract is not one of sale and conveyance, but one of service and employment.—*Roquemore & Hall v. Mitchell,* 52 South. 423. On the question of the authority of the general manager to make the contract and the character of the contract, counsel cites *Roquemore & Hall v. Mitchell, supra;* 104 Ala. 101; 128 Ala. 136; 94 Ala. 346; 65 Ala. 471; 135 Ala. 477. Secret instructions do not affect third persons.—69 Ala. 204; 112 Ala. 267; 108 Ala. 252; 105 Ala. 498; 97 Ala. 641; 149 Ala. 623; 86 Ala. 398.

MAYFIELD, J.—Appellants are both residents of the state of Georgia. They sued respondents in the chancery court of Geneva county, Ala., to enjoin the defendants from cutting and destroying the pine timber upon certain lands described in the bill, which timber is and was owned by the complainants, who, however, did not own the land upon which the timber was growing. The respondents answered and denied the equities of the bill, but admitted that they cut part of

the timber from the land, setting up a contract with the plaintiffs, however, by which they attempted to justify the cutting of the timber, and the right to continue cuting the same. The plaintiffs, by an amendment to the bill, denied the validity of the alleged contract by which the defendants claimed authority or right to cut the timber. The contract was signed in the names of plaintiffs, as partners, by one Carl Saye, manager. The amended bill denied the authority of Saye to execute the contract in the names of the plaintiffs, or to bind them in the premises. And the statute of frauds is also set up to show that Saye was not authorized in writing by the plaintiffs to execute the contract in question. The amended bill also set up the fact that plaintiffs repudiated the alleged contract as soon as they were apprised of its existence and denied the right of defendants to cut the timber. So the important questions presented to the chancellor for decision, and which are presented to us for review, are: First, whether Saye was authorized to bind the plaintiffs by the contract; second, if not, had the plaintiffs ratified the acts of Saye in such manner as to thereafter bind themselves under the terms of the contract; and, third, whether the contract was one in which Saye's authority to execute it should have been in writing. The chancellor decided all these questions against the plaintiffs, the appellants here.

It is correctly stated by appellants that the main question on this appeal is whether or not Saye had authority to execute the contract in question so as to bind the appellants. We are of the opinion that the chancellor reached the correct conclusion as to the fact that Saye did have such authority.

The plaintiffs were nonresidents, doing business in Alabama. It is certain that ostensibly, and so far as

the public and the defendants knew, Saye was the general manager of plaintiffs' business in Alabama. It seems that he was the person, at the time of the execution of the contract, with whom the public met, and who transacted business in the names of and for the plaintiffs. The plaintiffs were at their place of business in Alabama only once every 30 or 60 days, yet they were doing a constant business, in this state, of buying and selling lumber. Their specific business was that of operating a planing mill.

If Saye was the general manager of plaintiffs' business, and this contract was within the line of such business, and within the sphere of his powers as such manager, then he had the right to bind plaintiffs as to and by this contract, unless it was void under the statute of frauds or for some other reason not necessary to be here discussed. If the plaintiffs had intrusted their business in Alabama to Saye, then they could not limit their liability to the public or to the defendants, by secret instructions to Saye, concerning which the public and the defendants had no knowledge nor means of obtaining information.

"A general agent is one employed to transact all the business of his principal of a particular kind or in a particular place, and the powers of such agent are prima facie coextensive with the business intrusted to his care and cannot be narrowed even by secret instructions or limitations not communicated to the persons with whom he deals.—*British & Amer. Co. v. Cody,* 135 Ala. 628, 33 South. 832; *Syndicate Co. v. Catchings,* 104 Ala. 176, 16 South. 46." 5 Mayf. Dig. p. 776.

"The principal may be liable for the acts of the agent after revocation of the agent's authority, especially as to third persons who never dealt with him previously, if they are justified in believing that such agency existed

and have no notice of its revocation.—*Continental Co. v. Brooks,* 131 Ala. 620, 30 South. 876; *Wheeler v. McGuire,* 86 Ala. 398, 5 South. 190 [2 L. R. A. 808]; *Johnson v. Christian,* 128 U. S. 374 [9 Sup. Ct. 87, 32 L. Ed. 412]." 5 Mayf. Dig. p. 777.

"* * * If a person is held out to third persons, or to the public at large, by the principal, as having a general authority to act for and to bind him in a particular business, or employment, it would be the height of injustice, and lead to grossest frauds, to allow him to set up his own secret and private instructions to the agent, limiting that authority; and thus to defeat his acts and transactions under the agency, when the party dealing with him had, and could have, no notice of such instructions. In such cases, good faith requires that the principal should be held bound by the acts of the agent, within the scope of his general authority; for he has held him out to the public as competent to do the acts, and to bind him thereby. The maxim of natural justice here applies with its full force that he who, without intentional fraud, has enabled any person to do any act, which must be injurious to himself, or to another innocent party, shall himself suffer the injury, rather than the innocent party, who has placed confidence in him. The maxim is founded in the soundest ethics, and is enforced to a large extent by courts of equity. Of course the maxim fails in its application when the party dealing with the agent has a full knowledge of the private instructions of the agent, or that he is exceeding his authority."—Story on Agency (9th Ed.) § 127, pp. 143-145.

"Pothier has laid down the general rule in a very satisfactory manner, and says: 'But the contract made by my agent, in my name, would be obligatory upon me, if he did not exceed the power with which he was

ostensibly invested; and I could not avail myself of having given him any secret instructions, which he had not pursued. His deviation from these instructions might give me a right of action against himself, but could not exonerate me in respect of the third person, with whom he had contracted conformably to his apparent authority; otherwise, no one could be safe in contracting with the agent of an absent person.' "—Id., § 130, p 1.46.

The contract in question (which the reporter will set out in his statement of facts) is not for a sale of lands or any interest therein within the meaning of the statute of frauds (subdivision 5 of section 4289 of the Code), nor is it within the influence of section 3355 of the Code, as to conveyances or alienations of lands. It is clearly distinguishable from that class of contracts treated of in the cases of *Davis v. Miller-Brent Lumber Co.,* 151 Ala. 580, 44 South. 639, *Brooks v. Cook,* 141 Ala. 499, 38 South. 641, and *McGhe v. Wilson,* 111 Ala. 615, 20 South. 619, 56 Am. St. Rep. 72; but falls within the class treated of in the case of *Roquemore & Hall v. Mitchell,* 167 Ala. 475, 52 South. 423, 140 Am. St. Rep. 52, *Scoggin v. Slater* 22 Ala. 687, and *Cassell v. Collins,* 23 Ala. 676.

This contract was not for, or concerning, the sale of land or of growing timber or of any interest therein. It was for personal services, to be performed by one party for another. It is true that this labor or service consisted in felling trees, sawing them into lumber, and selling the lumber or delivering the same to the owner; but there was no attempt to sell the land or the growing timber or any interest therein. While the contract involved the destruction of growing timber, which is a part of the land, it was not an attempted sale of the land or trees or any interest therein. It merely con-

[Simpson & Harper v. Harris & Scrandrett.]

ferred the right or permit to sever the trees from the freehold and to convert them into chattels, and to then sell the chattels; but all this was to be done by the defendants for the plaintiffs. The defendants acquired no title or interest in the land or growing trees, nor even in the lumber after it was severed, except to deliver it to plaintiffs, or to sell it to others for plaintiffs ·for the consideration mentioned.

Mr. Browne, in his work (the Statute of Frauds, § 233, p. 308), quotes the following from a New York case: "This was not a contract for sale of lands, tenements, or hereditaments, or any interest in or concerning them, but related to the *labor* only which had been bestowed upon the land, under the denomination of improvements. Was it ever supposed that a parol contract to pay for work to be done on land, or for what had been done, was a void undertaking as under the statute? The contract in such case does not go *to take from the promisor* the land or any interest in or concerning it."

We do not find that there was any such breach of the contract, on the part of the defendants, as would justify a rescission and an injunction of its further performance. The fact that the sawmill mentioned in the contract was burned, and rebuilt a half mile from the old site, with a change in the name of the mill, was certainly not a sufficient prima facie showing whereon to prevent further performance of the contract by having the lumber sawed at the new site.

We find no error in the record, and the decree of the chancellor is in all things affirmed.

All the Justices concur, save DOWDELL, C. J., not sitting.