# Dadeville Union Warehouse & Wholesale Grocery Co. *v.* Jefferson Fertilizer Co.

## *Assumpsit.*

(Decided October 14, 1915.   Rehearing denied November 18, 1915.
69 South. 918.)

*Corporations; General Manager; Apparent Authority.*—The general manager of a corporation who was actively and ostensibly at the head of the business, under the authority of its board of directors, and who bought all of the commodities dealt in by it, could bind such corporation by his purchase of fertilizer, although it was a new line of trade and privately prohibited by the company; the buying and selling of fertilizer being germane to its general business, the principal line of which was wholesale groceries and advancing to farmers, but which also included dry goods, agricultural implements, cotton seed meal, etc.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Assumpsit by the Jefferson Fertilizer Company against the Dadeville Union Warehouse & Wholesale

Grocery Company. Judgment for plaintiff, and defendant appeals. Affirmed.

BULGER & RYLANCE, for appellant.

JAMES W. STROTHER, for appellee.

SOMERVILLE, J.—We find no reversible error in the rulings of the trial court on the pleadings and evidence. The defendant company is a corporation chartered for and doing a general merchandise and warehouse business. Its "general manager" was one Shaffer, who was actively and ostensibly at the head of the business under the authority of the board of directors. He bought all the merchandise and commodities dealt in by the company, although, according to the testimony of the president, he did so under the president's advice and restrictive orders, and had been directed by him not to handle fertilizers.

On March 23, 1912, Shaffer, by written contract in the name of the company, bought of plaintiff a large lot of fertilizers, for the purpose of resale in small ots to neighboring farmers, and about June 1, 1912, executed four purchase-money notes to plaintiff, also in the name of the company, by himself "as general manager." His name appeared on the company's letter head as "general manager," in company with that of the president and vice-president. The fertilizer was shipped to the company, as consignee, and was received by Shaffer, as he says, for the company, and all but a small lot of it was sold to various purchasers by Shaffer out of defendant's warehouse, adjoining the general store, where all but one car load of it was stored.

The defense set up is that Shaffer was without authority, express or implied, to buy the fertilizer and

bind the company to pay for it. It does not appear that the transaction was ratified by the president or directors of the company; and the controlling question is: Did Shaffer's ostensible authority, as general manager and buyer of the company's supplies, authorize him, as to third persons, without notice of restrictions upon his actual authority, to bind the company by the purchase of fertilizers for resale in its business? It is clear, both on reason and authority, that Shaffer could bind the company by his purchase of any and all merchandise and supplies customarily dealt in by a wholesale and retail grocery business engaged in selling and advancing to farmers, which was the business of the defendant company, or which were germane and appropriate to such a business.—*Wallis Tobacco Co. v. Jackson,* 99 Ala. 460, 13 South. 120. And this was the case, regardless of his employer's private instructions to him, since they were not known to plaintiff.—*Simpson v. Harris,* 174 Ala. 430, 56 South. 968; *Louisville Coffin Co. v. Stokes,* 78 Ala. 372; *Ins. Co. v. Catchings,* 104 Ala. 187; *Montgomery Fur. Co. v. Hardaway,* 104 Ala. 115, 16 South. 29; *Wheeler v. McGuire,* 86 Ala. 398, 5 South. 190, 2 L. R. A. 808.

The question then is: Was the buying and selling of fertilizers germane to the general business in which the defendant company was engaged, either by natural relation, or as the result of custom? We do not judicially know that it is customary for mercantile concerns like this defendant to handle fertilizers as one of their lines of trade, but it is a matter of common knowledge that they sometimes do so. This assumption finds recognition in the precautionary instruction given by defendant's president (as he alleges) to his manager,

Shaffer, *not to handle fertilizers*. It is true that, when a plaintiff sues for the price of goods sold by him to the particular business, the burden is on the plaintiff to show that the goods sold were "reasonably adapted to, or customarily used in, a business of that kind."— *Wallis Tobacco Co. v. Jackson,* 99 Ala. 460, 13 South. 120; 2 C. J. 927, § 672. In the case just above quoted from, the character of the goods was not shown. In the instant case the specific character and uses of the goods, as well as the nature and scope of the business, are shown without dispute. Its principal line was wholesale groceries and advancing to farmers. It included, also, dry goods, agricultural implements, cotton seed meal, etc.

The buying and selling of commercial fertilizers, though not necessarily implied, was not so extraneous to the business, nor so inadapted to its general character and conduct, as to suggest to plaintiff any want of authority in a general manager and purchaser of stocks to buy them for resale as other commodities were handled. In this view of the case, we think it must be said, as a matter of law, that Shaffer could and did bind the defendant company by his purchase of these fertilizers; and this, although it was a new line of trade, and privately prohibited by the company itself. Business is based largely on confidence, and any other rule would, as often noted by courts, permit a ruinous deception of innocent persons, and an unfair evasion of just liability by those who have chosen to give apparent authority to their alter ego managers.

If there were any technical errors in rulings on pleadings or evidence, they were not material to a meritorious decision of the case, and the general affirmative charge

[Staples v. City Bank & Trust Co.]

was properly given for the plaintiff. The judgment must therefore be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.