(75 South. 984)

GEORGIA COTTON OIL CO. v. CARLISLE SEED CO. (5 Div. 656.)

(Supreme Court of Alabama. May 17, 1917.)

1. ATTACHMENT ⬤➡8 — CLAIM FOR MONEYED DEMAND—STATUTE.

Suit for breach by the purchaser of a contract to purchase a specified number of tons of cotton seed at an agreed price of so much per ton f. o. b. cars was for a moneyed demand, the amount of which could be certainly ascertained, and came within Code 1907, § 2926, authorizing issuance of writ of attachment by the clerk of the circuit court when the claim is for a moneyed demand, the amount of which can be certainly ascertained as specified by section 2924, subd. 2.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 30.]

2. ATTACHMENT ⬤➡103 — AFFIDAVIT — STATUTE.

The affidavit on which attachment was based, averring facts which showed that the suit was on a moneyed demand the amount of which could be certainly ascertained, and that defendant resided out of the state, and was about to remove its property so that plaintiffs would probably lose the debt, etc., and that the attachment was not sued out to harass the defendant, was in full compliance with Code 1907, § 2927, prescribing the requirements of plaintiffs' oath to be made before issuing attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 273-275.]

3. SALES ⬤➡377—REMEDIES OF SELLER—ACTION FOR BREACH—COMPLAINT.

A complaint, seeking recovery of damages for breach of contract whereby defendant agreed to purchase from plaintiff 200 tons of cotton seed at an agreed price of $32.50 per ton, alleging that plaintiffs were ready, able, and willing to deliver in compliance with the contract, and that defendant refused to accept the cotton seed and pay for it, to plaintiffs' damage, sufficiently stated a cause of action.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092.]

4. SALES ⬤➡382—BREACH OF CONTRACT—EVIDENCE.

In an action by the contracted seller of cotton seed for the buyer's breach, in view of a conflict in the testimony, testimony, on cross-examination, of defendant's representative in the deal, that cotton seed purchased by defendant's local agent in the city at the same time cost the company $32 a ton, nearly the price specified in the contract in suit, was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1096.]

5. PRINCIPAL AND AGENT ⬤➡23(5)—AGENCY—SUFFICIENCY OF EVIDENCE.

In such action, evidence held sufficient to justify finding that defendant's representative in the deal was defendant's general agent in regard to the matters involved.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41.]

6. PRINCIPAL AND AGENT ⬤➡124(3)—LIMITATION OF AUTHORITY—QUESTION FOR JURY.

Whether or not defendant's representative was in fact limited by his principal's instructions to a price of $30 per ton, held for the jury.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 724.]

7. SALES ⬤➡384(2) — PURCHASER'S BREACH — MEASURE OF DAMAGES.

In an action for the purchaser's breach of a contract of sale, the general rule as to the measure of damages is the difference between the contract price and the market value of the goods at the time and place of delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1099.]

8. EVIDENCE ⬤➡474(19) — BREACH OF CONTRACT—VALUE—EVIDENCE.

In an action for the purchaser's breach of contract to buy cotton seed, where the proof showed that there was at the time specified for delivery an open market for seed at the point where the seed in controversy was to be delivered, testimony of a witness who did not know the market value of seed at that point, but only at other places, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2218.]

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Suit by the Carlisle Seed Company against the Georgia Cotton Oil Company. From a decree for complainant, respondent appeals. Transferred from the Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

James W. Strother, of Dadeville, for appellant. Bulger & Rylance, of Dadeville, for appellee.

GARDNER, J. Appellee brought this suit against the appellant for the recovery of

damages for the breach of a contract wherein the appellant agreed to purchase from the appellee 200 tons of cotton seed at the agreed price of $32.50 per ton, to be delivered on board the cars at Dadeville, Ala., December 1, 1913. It is further alleged that the defendants were ready, able, and willing to deliver said cotton seed in compliance with said contract, and the defendant refused to accept said cotton seed and pay for the same, whereby plaintiffs were damaged in the sum of $500.

This suit was begun by an attachment issued by the clerk of the circuit court. The affidavit on which said attachment was based contained in substance the above averments, and in addition thereto the further allegation that the said Georgia Cotton Oil Company resided out of the state of Alabama, and is about to remove its property out of the state, so that plaintiffs will probably lose the debt, or have to sue for it in another state, and that this attachment is not sued out for the purpose of vexing or harassing the defendant. Motion was made in the court below to dissolve the attachment upon the ground, first, that the same was executed by the clerk of the circuit court, and the demand sued for is not such an one as that the statute authorizes that officer to issue an attachment for its enforcement. Section 2926, Code 1907, authorizes the issuance of a writ of attachment by the clerk of the circuit court when the claim is such as specified in subdivision 2 of section 2924 of the Code, which reads as follows: "For any moneyed demand, the amount of which can be certainly ascertained."

[1] This being a case for the breach by the purchaser of a contract of purchase of a certain number of tons of cotton seed at an agreed price of $32.50 per ton f. o. b. cars at Dadeville, Ala., to be delivered December 1, 1913, we are of the opinion the same is for a moneyed demand, the amount of which can be certainly ascertained, and comes within the above-cited subdivision of said section. Tenn. R. T. Co. v. Kavanaugh, 93 Ala. 324, 9 South. 395; Atkinson v. James, 96 Ala. 214, 10 South. 846.

[2, 3] The second ground for the motion to dissolve the attachment rested upon the alleged insufficiency of the affidavit. We have above stated the substance of the affidavit which was duly signed by one of the plaintiffs and duly sworn to, and it requires no discussion to show that the same was in full compliance with section 2927 of the Code. The substance of the complaint appears in the opening of this opinion, and sufficiently states a cause of action. It was not subject to any of the assignments of demurrer interposed thereto. 35 Cyc. 586.

[4] The contract for the sale of the seed by the plaintiffs to the defendant company was entered into on Friday, November 30, 1913, the seed to be delivered at Dadeville the following day, December 1st. The trade was made by one Willis, representing the defendant company, and who was shown to be their representative in the purchase of the cotton seed in the open market. The evidence for the plaintiff and defendant was in sharp conflict as to what the agreement was as to the price, plaintiff insisting the agreed price was $32.50 per ton, while Willis, the agent, insisted that the agreement was for $30 per ton, and that his instructions were to limit the price to that sum, and that the seed were not worth more than that sum. One Sturdivant who testified in the cause for the plaintiff was the local agent for the defendant company in the purchase of cotton seed at Dadeville during that season. On cross-examination of Willis, the agent, plaintiff was permitted to ask if the seed purchased by the agent Sturdivant at Dadeville at this same time did not cost the company $32 per ton, to which the witness answered in the affirmative. In view of the conflict in the testimony, and the issues presented, we think it clear that this testimony was admissible.

The defendant was a nonresident corporation, its principal place of business being in the state of Georgia. One Farley was manager for the company at that time, and he resided at Albany, Ga., and stated that he did not know the market value of seed at Dadeville at that time, but only that they were buying seed there for $30 per ton and commissions through their local agent, but he did not recall what was the commission. The proof shows that Willis was the traveling agent for the company in this section. To quote the witness Farley: "He was out representing us, buying seed over the country, and he was our representative." Willis states that he was in the business of buying seed for the company through that section, and also selling for the company meals, hulls, and fertilizer. One of the witnesses for the plaintiff testified that he had represented the defendant company for three years as their agent in the purchase of cotton seed, and that said Willis as the representative of defendant gave him prices by which he should buy seed from time to time, and the seed so bought he shipped to the company at the prices given him by Willis. The proof further tends to show that no commission had to be paid out of the purchase of the seed in question to the local agent. The evidence just referred to above in regard to what seed purchased by the local agent of defendant at Dadeville costs the defendant company discloses that the seed purchased by the defendant at Dadeville at that very time through their local agent cost the defendant $32 per ton. The evidence also tends to show the price of seed varied from time to time at very short intervals.

The counsel for appellant insisted that the defendant should have been given the affirmative charge because of the evidence of Farley, the manager, and of Willis, the agent, to the effect that the former had told the

latter not to pay over $30 per ton for the seed.

[5] We are of the opinion that the evidence was sufficient for the jury to find that Willis was the general agent of defendant company in respect to the matters here involved. Gibson v. Snow Hdw. Co., 94 Ala. 346, 10 South. 304; Wheeler v. McGuire, Scroggins & Co., 86 Ala. 398, 5 South. 190, 2 L. R. A. 808; Simpson & Harper v. Harris & Scrandrett, 174 Ala. 430, 56 South. 968; Syndicate Ins. Co. v. Catchings, 104 Ala. 176, 16 South. 46; Dadeville Union Warehouse Co. v. Jefferson Fert. Co., 194 Ala. 683, 69 South. 918; Dothan Gro. Co. v. Pilcher, 75 South. 899,[1] present term; Mechem on Agency, vol. 1 (2d Ed.) §§ 736–739. The plaintiff's testimony tended to show that they had no knowledge or notice of any such instructions, and clearly there was nothing surrounding the transaction to give any indications thereof, and the instructions would seem to come within the definition of secret instructions given by the author in Mechem on Agency, supra, in section 733.

· [6] The evidence above referred to we think was also sufficient for submission to the jury as to whether or not the agent Willis was in fact so limited by instructions to $30 per ton, and that upon a consideration of all the evidence in the case the questions presented in this record were properly submitted for the jury's determination, and there was no error in refusing the affirmative charge.

[7, 8] The general rule as to the measure of damages in cases of this character is the difference between the contract price and the market value of the goods at the time and place of delivery. Gwin v. Hopkinsville M. Co., 190 Ala. 346, 67 South. 382. The proof shows that there was at the time specified for delivery an open market for cotton seed at Dadeville where the seed here in controversy was to be delivered, and there was, therefore, no error in sustaining the objection to the testimony of the witness Conine who did not know as to the market value of the cotton seed at that point, but only as to other places. This also applies to the objection sustained to the question in the examination of the witness Graves.

Charge 2 refused to the defendant sought to limit the recovery to nominal damages only, and this is assigned as error upon the theory that there was no evidence tending to show the market value of the seed f. o. b. the cars at Dadeville, but we are of the opinion that the evidence was sufficient for the jury to determine the value at $30 per ton at that time, and that reversible error cannot be predicated upon this action of the court.

The few remaining questions we do not consider merit discussion, but the same have been given due consideration in consultation. We find no error calling for a reversal of the cause, and the same will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.