(88 South. 669)

## CLARK & BARKER v. EUFAULA BRICK WORKS. (4 Div. 916.)

(Supreme Court of Alabama. April 21, 1921.)

1. **Principal and agent ⊙⇒108(1)—Facts held to show manager had apparent authority to borrow money to pay employees.**

In an action for money advanced on the order of an alleged agent where defendant admitted that the alleged agent was his superintendent in charge of the brick works, *held*, that the agent had apparent authority to borrow money to pay the employees at the brick works and to order goods sold to them on the credit of the works.

2. **Trial ⊙⇒251(2)—Special charge as to authority of agent held erroneous for failing to limit authority to transactions in controversy.**

In an action for money paid on the order of an agent, a requested charge that if the jury believed the evidence they would find that the person receiving the money was the agent of the defendant was properly refused, because it did not limit the agency of the defendant to the transactions in controversy.

3. **Sales ⊙⇒53(1)—Evidence held not to show conclusively one item of account was sold on order of authorized agent.**

In an action for money and goods delivered to an agent of defendant, where the evidence showed agent had apparent authority to order the goods and borrow the money, an affirmative charge for the amount claimed was properly refused, where the evidence as to one item furnished did not show conclusively it was furnished on the authority of the agent or that credit extended to defendant therefor.

4. **Trial ⊙⇒235(2)—Special charge that evidence authorized particular inferences states no proposition of law.**

A special charge that, from the evidence, the jury were authorized to infer that F. was the agent of defendant, stated no proposition of law.

5. **Appeal and error ⊙⇒216(2) — Indefinite charge not prejudicial in absence of request for explanatory charge.**

The giving of a special charge at defendant's request which was indefinite and elliptical in particulars, though its theory was sound, was not reversible error; if plaintiff feared it was misleading, he should have requested an explanatory charge.

6. **Evidence ⊙⇒471(30) — Questions whether individual was defendant's agent, general or special, call for conclusion.**

Questions asked defendant whether the person who ordered the goods was his general agent, his special agent, or his agent at all, called for a conclusion on the vital issue in the case.

7. **Evidence ⊙⇒472(1) — Principal and agent ⊙⇒24, 124(1)—Existence of agency is question for court or jury upon the facts; conclusion of principal inadmissible.**

Where the evidence is undisputed, the existence, character, and extent of the agency are questions of law for the court, and, where the evidence is in dispute or different inferences therefrom may be reasonably drawn, those questions of law and fact are mixed questions of law and fact to be decided by the jury, and in either event the conclusion of the alleged principal is inadmissible.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Assumpsit by Clark & Barker, a partnership, against the Eufaula Brick Works. Judgment for defendant, and plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

The following charges were refused to the plaintiff:

(1) I charge you that, if you believe the evidence, you will find from the evidence that Freeman was the agent defendant.

(2) Affirmative charge for the amount claimed.

(3) From the evidence you are authorized to infer that Freeman was the agent of the defendant.

Chauncey Sparks, of Eufaula, for appellant.

If a plea be available as a defense, the statute of frauds must be pleaded. 86 Ala. 487, 5 South. 867. The plaintiff should have been given requested charges 1, 2, and 3. 65 Ala. 113; 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87; 9 Ala. App. 530, 63 South. 768; 112 Ala. 663, 20 South.' 978; section 5362, Code 1907. A witness cannot testify as to the conclusion either of law or of facts. 109 Ala. 98, 19 South. 513; 201 Ala. 601, 79 South. 33; 96 Ala. 255, 11 South. 280; 16 South. 912; 17 Cyc. 219; 2 C. J. 935; 22 C. J. 634.

McDowell & McDowell, of Eufaula, for appellee.

It appears that there was other evidence before the court not set out in the record; therefore this case should be affirmed. 155 Ala. 357, 46 South. 588; 146 Ala. 349, 39 South. 449, and Rules of Practice.

McCLELLAN, J. The appellant firm sued the appellee in assumpsit, declaring through counts on an account, account stated, etc. The plaintiffs (appellants) are merchants in Eufaula. The defendant is a brick-making concern, operating just across the river, in Georgia, from Eufaula. The brick works is owned by A. J. Baldwin, who resides 40 miles from his plant. The account's items consist of money furnished by the plaintiffs to pay workmen at the brick plant, on the order of J. R. Freeman, and goods supplied to workmen or for their account by the order or direction of J. R. Freeman—all charged on the plaintiffs' books to the account of the

Eufaula Brick Works, on the credit of which, alone, the plaintiffs testify the money and goods were furnished or supplied.

The record of the trial and the briefs on this appeal distinctly disclose that the determinative question was, and is, whether Freeman was authorized to bind, to obligate, the defendant as by and for the account declared on.

[1] A number (not all) of the "orders" given by Freeman to the plaintiffs, and offered in evidence, are set out in the bill of exceptions, following the recital that they would serve to illustrate the "nature of this testimony." All of those reproduced in the record purport on their faces to carry the desire or direction of the Eufaula Brick Works, Freeman signing them as "superintendent" or individually. One of the plaintiffs testified:

"Mr. Freeman ran the brick works; he was manager. * * * When the Eufaula Brick Works started up, Mr. Freeman was in charge of it. * * * Mr. Baldwin lives in Dawson, Ga. He was not over there at the brick works."

The witnesses Benton and McKenzie testified that Freeman was "in charge" of the brick works and they had dealings with him in that capacity. On cross-examination A. J. Baldwin testified:

"He [Freeman] was not a day laborer. He looked after the hands, also after the works to see if it went on right. He looked after the machinery to the best of his ability. He was superintendent over there. He supervised the whole thing. Mr. Freeman has been in charge of the business ever since I started it. He had the right to hire labor, to discharge it, to say what the wages would be, and to distribute money. * * * Yet [i. e., yes] Mr. Freeman had general superintendence of the plant; but he was not authorized to buy things. He had the general superintendence though. I live in Dawson, Ga., 40 miles away; and Mr. Freeman was in charge of my brick plant over there."

Baldwin's testimony also went to show that he supplied the funds for the pay roll of the plant by check payable to Freeman, sent from Dawson. The evidence otherwise was to the effect that Freeman took checks of this character to the plaintiffs, having often previously gotten the money from them with which he paid the hands; this paying off at plaintiffs' store, according to Freeman's testimony, being done to help their trade among the hands. That plaintiffs, in good faith, regarded Freeman as the manager or superintendent of the plant, and so dealt with him as the representative of the owner of the plant, is clear. The testimony in the record, particularly that given by Baldwin, established and characterized Freeman's relation to the enterprise and its remotely resident owner as more than a special agency, and justified the

plaintiffs in regarding his ostensible authority, as "superintendent" or "manager," as including the right, for his principal, to borrow or cause the advancing of money to pay his operatives and to have goods supplied to those in his service, regardless of the absence of express authority to do so or of Baldwin's secret directions otherwise.

The evidence brings the case within the doctrine stated in Montgomery Furniture Co. v. Hardaway, 104 Ala. 100 (6th headnote) 115, 16 South. 29; Simpson v. Harris, 174 Ala. 430, 434–435, 56 South. 968; Dadeville Gro. Co. v. Jefferson Fertz. Co., 194 Ala. 685, 69 South. 918; 1 Mechem on Agency, §§ 908, 909, 979, 980, 988. That the stated considerations and credit extended Freeman's principal, or for the principal's account, by these plaintiffs, was within the customary, normal course of the business in question, appears to be indubitable. That Freeman's course of conduct consisted with this ostensible authority is likewise clear.

The report will contain plaintiffs' refused charges 1 and 3.

[2] Special charge 1, requested for plaintiffs and refused, reads differently in the bill of exceptions and in the record proper. In both places it omits to conclude, from the hypothesis recited, to Freeman's agency in respect of the creation of the obligations out of which this cause of action arose. That Freeman was an agent of the defendant was not disputed. The extent of his authority to obligate the defendant to third parties, these plaintiffs, was the litigated question. The charge fell short of concluding direction, and its refusal did not prejudice the plaintiffs.

[3] Charge 2, refused to plaintiffs, was not due then, since the item of the account for goods furnished Elisha Daniels was not conclusively shown to have been a credit extended to the defendant on the authority of Freeman or otherwise. On the contrary, the evidence of the plaintiff (Barker) was at least susceptible of the interpretation that Freeman would make Daniels, the debtor, pay by withholding the amount ($7.45) from Daniels' wages to be later earned and paid. This charge required a finding for plaintiffs for the whole amount claimed.

[4] Charge 3, refused to plaintiffs, stated no proposition of law; and is subject to the criticism made above with respect to refused charge 1. There was no error of prejudice to plaintiffs in refusing this request (3).

[5] Notwithstanding the special charge given the jury at defendant's request is indefinite and elliptical in particulars readily observable, its theory was sound. It might have been refused without error. If plaintiffs conceived that it possessed misleading tendencies, an explanatory charge should have been requested; since it is not reversible error to give special instructions possessing such tendencies.

[6, 7] It was reversible error to overrule plaintiffs' objections to these questions:

"Is he [meaning Freeman] your general agent"? "I will ask you if he is your special agent." "I'll ask you if he is your agent at all."

These questions touched a vital issue in the cause. Their design and effect was to elicit the witness' (the alleged principal's) mere opinion or conclusion, first, what was the character of Freeman's agency, general or special; and, second, whether he was an agent at all for the witness. Where the evidence is undisputed, agency vel non its character and extent, are questions of law for the court; and where the evidence is in dispute, or different inferences therefrom may be reasonably drawn, agency vel non, its character and extent, are mixed questions of law and fact, to be decided by the jury under the guidance of appropriate instructions from the court. 21 R. C. L. p. 822, § 6; 1 Mechem on Agency (2d Ed.) §§ 293, 295, 296, note 5 collecting some of the pertinent decisions of this court affirming the rule; S. & N. R. R. Co. v. Henlein, 52 Ala. 606, 610, 23 Am. Rep. 578; Seehorn v. Hall, 130 Mo. 257, 32 S. W. 643, 51 Am. St. Rep. 562; Willcox v. Hines, 100 Tenn. 524, 45 S. W. 781, 66 Am. St. Rep. 761, 766–767. In either aspect, the matter sought by the quoted questions was inadmissible as opinion or conclusion merely, and on objection should not have been permitted expression to the jury.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.