(93 South. 857)

## TISON v. CITIZENS' BANK & SECURITY CO. (7 Div. 184.)

(Supreme Court of Alabama. June 8, 1922. Rehearing Denied June 30, 1922.)

1. **Assignments ⟐131—Allegations that seller of account filed it for purchaser in debtor's bankruptcy proceeding did not detract from allegations of assignment.**

In an action for the balance due on the purchase price of an account sold to the defendant, the allegation that the vendor, at the request of the purchaser defendant, had filed the account as a claim in bankruptcy proceedings of the debtor, and that the proceeds of that claim had been applied to the credit of the purchaser of the account, *held* not to detract from the effect of antecedent allegations of an effectual assignment of the account.

2. **Frauds, statute of ⟐36—Purchase of account held not promise to answer for debt of another.**

The purchase of an account is not a promise of the purchaser to answer for the debt of another, giving application to the statute, since the consideration of purchaser's promise to pay is the account against the debtor.

3. **Assignments ⟐34—Chose in action may be assigned orally, and without delivering evidence of the debt.**

Assignment of a chose in action may be by parol, and delivery of a draft of an account sold is not essential to effectual assignment.

4. **Assignments ⟐121 — Beneficial owner of chose in action may sue in his own name.**

Under the statute, the beneficial owner of choses in action may sue thereon in his own name.

5. **Evidence ⟐472(1)—Question as to who committee was acting for held improper, as calling for opinion on matter in issue.**

Where an "executive committee," alleged to have been acting for the purchaser of a coal and iron company in order to protect it from a material lien for furnace brick, bought the account from a credit company with the understanding that such company would file the claim

in bankruptcy proceedings of the former owner, then pending, and credit the purchaser with the amount received as part payment, held, in an action for the balance due on the account, that the question to a witness, "For whom was the 'executive committee' acting?" was improper, as calling for the witness' opinion or conclusion on a matter in issue.

**6. Witnesses** ⊚⇒237(4) — **Question held improper as assuming a material issue of agency and acts thereunder.**

Where an executive committee, alleged to have been acting on behalf of a purchaser of a coal and iron company, bought a lien claim for furnace brick against the property to protect it, and where in an action on the claim the authority of the executive committee to so act becomes a material issue, the question to plaintiff's witness: "In reference to assigning the claim after you sold it to defendant, to this executive committee, state whether or not you did all in reference thereto that any of defendant's servants, or agents, or attorneys requested you to do. Did you leave anything undone that they asked you to do?"—held improper, as assuming the existence of the committee's agency and the authority to bind defendant, and as assuming that the sale of the claim or account was so effectually accomplished as to bind defendant.

**7. Principal and agent** ⊚⇒120(1)—**Questions held improper as not relevant to issue of agency.**

Where an "executive committee," alleged to have been in charge of a coal and iron company for the purchaser thereof, bought a material lien claim for furnace brick against the company to protect it, with the understanding that a credit company then holding the claim would file in bankruptcy proceedings of the former owner then pending, and credit the proceeds as part payment, the question to plaintiff's witness in an action on the claim, "Did this committee or anybody else write defendant, objecting to the method or manner in which the claim was handled?" was improper, since the authority of the committee which was in issue could not be established in any degree by the failure or omission of the committee or of any one else to write defendant, objecting to the method or manner of handling the claim.

Appeal from Circuit Court, Talladega County; Leon McCord, Judge.

Action by the Citizens' Bank & Security Company against Alexander Tison. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following charges were requested by and refused to defendant:

"(1) The court charges the jury that if they believe the evidence in this case they cannot find for the plaintiff."

"(4) The court charges the jury that if the jury believes the evidence in this case they cannot find for the plaintiff under count A of the complaint."

"(5) The court charges the jury that, in order for the defendant to be liable for the balance due on any account from the Bird Coal & Iron Company to the plaintiff, an agreement to pay the same, or some note or memorandum thereof expressing the consideration, must be in writing, subscribed by the defendant or some other person by him lawfully authorized in writing, and if the jury believe that there is no such agreement in writing, then they must find for the defendant.

"(9) The court charges the jury that, even if they believe from the evidence that said Stebbings and the other parties testified about had authority to agree to pay the balance due by the Bird Coal & Iron Company after the plaintiff had received the dividend from the bankrupt estate, notwithstanding this, before they can bind the defendant to pay such debt or the balance due on such debt of the Bird Coal & Iron Company, the agreement to so pay the same must have been in writing, subscribed by the plaintiff or some agent of his duly authorized in writing.

"(10) The court charges the jury that there is no consideration shown for the alleged purchase of the account sued on in this case."

"(13) The court charges the jury that in order to make the defendant liable under the law for the debt of the Bird Coal & Iron Company it must be shown to the satisfaction of the jury that there was an assumption of said debt by the said Alexander Tison, or some one duly authorized by him, and that there was a consideration for the same and the assumption of the same was in writing, reciting the consideration, either signed by him or by some one duly authorized in his behalf.

"(14) The court charges the jury that in this case there is no evidence to show that the said E. J. Bird or W. L. Stebbings or ⸺ Hiroaka separately or collectively had any authority to purchase the claim of the plaintiff or the Southern Refractories claim or the claim of the Commercial Credit Company of Baltimore, as alleged and claimed.

"(15) The court charges the jury that if they believe the evidence in this case they cannot find for the plaintiff on count A."

Knox, Acker, Dixon & Sims, of Talladega, for appellant.

The court erred in overruling defendant's demurrer to the complaint. 2 C. J. 562; 21 R. C. L. 904; 159 Ala. 487, 49 South. 227. Defendant's objections to the questions propounded to the witnesses Bird and Ladd should have been sustained. 6 R. C. L. 652; 3 Dig. Am. Rep. 307.

Riddle & Riddle, of Talladega, for appellee.

The complaint was not subject to demurrer. 206 Ala. 595, 91 South. 478.

McCLELLAN, J. The plaintiff, appellee, sued defendant, appellant, stating its case in count A, eliminating other counts theretofore filed. So far as presently important, count A reads:

"Plaintiff claims of the defendant $3,000, with interest thereon, for that whereas, on or

about March 1, 1918, Bird Coal & Iron Company of Talladega, Ala., was indebted to plaintiff and Commercial Credit Company, of Baltimore, Md., in the sum of, to wit, $3,627, which was due from said Bird Coal & Iron Company on an account for fire brick which had been sold and delivered to said Bird Company by Southern Refractories Company of Ft. Payne, Ala., and which account was at said time the property of the plaintiff and said credit company, and which said indebtedness and account said then owners sold to defendant at and for the sum of $3,627, which defendant agreed to pay plaintiff and said credit company for said account and said indebtedness, and defendant did pay them the sum of $627 thereon shortly thereafter, leaving a balance due thereon to plaintiff and said credit company of $3,000, and plaintiff and said credit company agreed with defendant to file said claim in the bankruptcy proceeding against said Coal & Iron Company, and give defendant credit for such dividends as were paid thereon by the United States Court sitting in bankruptcy, where said cause was pending, which they did or caused to be done, and there was paid to them as such dividends the sum of, to wit, $188.87 on the 25th day of May, 1918, to which sum defendant is entitled to credit, and plaintiff avers that thereafter, and before the commencement of this action, the interest of said credit company in said account and said indebtedness became and was the property of the plaintiff, who owned the same in its entirety at the time of the commencement of the action, and who still owns the same."

[1, 2] The declaration is on the defendant's promise to pay the agreed price for the account against the Bird Coal & Iron Company sold by the plaintiff and another to defendant. The action is to recover the purchase price in the sale of a chose in action. The count is not demurrable. The averments relating to the filing of the account as a claim in the bankruptcy court (in whose name is not averred), and the application of dividends received in that administration of the bankrupt's estate to the credit of defendant's indebtedness created by his promise to pay said sum in the purchase of the account, did not detract from the effect of the antecedent allegations of an effectual assignment of the account to defendant. Under the averments of this count, the statute of frauds could not be applicable. It did not declare on any promise of the defendant to pay the debt of a third person, viz. Bird Coal & Iron Company, within the purview of the statute of frauds. The consideration for defendant's promise was the account against the Bird Company. Under the averments of count A the fact that a poor bargain was consummated, if so, is not material. The demurrer was properly overruled.

[3] It has been held here that an effectual, property-passing assignment of a chose in action may be made by parol. Wells v. Cody, 112 Ala. 278, 20 South. 381; Strickland v. Lesesne, 160 Ala. 213, 216, 217, 49

South. 233. After reiterating the doctrine of Wells v. Cody, it was said in the latter case:

"There must be enough done, however, to evince an intention to transfer or assign eo instante, as distinguished from a mere offer or purpose to do so. The owner must do or say something which would indicate a transfer of his claim or right to another."

[4] Consistent with the doctrine of these decisions delivery of a draft of the account is not essential to an effectual assignment. At the following citations will be found interesting collations of the authorities on the subject: Hooker v. Eagle Bank, 30 N. Y. 83, 86 Am. Dec. 351, 354; American Bank, etc., v. Federal Nat. Bank, 226 Pa. 483, 75 Atl. 683, 27 L. R. A. (N. S.) 666, 667, 134 Am. St. Rep. 1071, 18 Ann. Cas. 444, 447, 448; 2 R. C. L. pp. 595–6, 615. Under our statute, the beneficial owner may sue in his own name. Wells v. Cody, supra.

The reliance of the plaintiff to show a sale and purchase of the account, as averred, was placed in statements made by an "executive committee," composed of Stebbings, Hiroaka, and the elder Bird, to which, to state generally plaintiff's contention, defendant had delegated the authority to take charge of and repair for operation the furnace, formerly owned by the Bird Coal Company, defendant had shortly theretofore acquired. Under the whole evidence the solution of these major inquiries was for the jury: (a) Whether this "executive committee," or a member or members of it, was or not authorized, as agent or agents of defendant, to purchase this account; and (b) if so, whether an intention to accomplish an assignment of the account to defendant characterized the dealing between Ladd (agent of the sellers of the brick to the Bird Company) and the "committee" or one or more of its so authorized members. Bearing in mind the true issues tendered by and resulting from the averments of count A, the trial court did not err in refusing special requests for instructions numbered 1, 4, 8, 9, 10, 13, 14, and 15. An important inquiry of fact was the extent of the authority conferred on the "executive committee" or on Stebbings, Bird, or Hiroaka, or any of them. The law of agency, in such circumstances as are here involved, has been often stated by this court; repetition is not necessary. Clark v. Eufaula Brick Works, 205 Ala. 545, 88 South. 669.

[5] The court erred in permitting, over defendant's aptly grounded objection, this question to the witness E. J. Bird, Jr.: "For whom was this executive committee acting?" The answer was that the committee was acting "for" this defendant. The question called, improperly, for the witness' opinion or conclusion on a material issue in the case. Clark v. Eufaula Brick Works, 205 Ala. 545, 88 South. 669–671. The several questions to this witness, designed to elicit testimony

descriptive of the acts of Stebbings, Bird, Sr., and Hiroaka, or the "executive committee," if such there was, in or about the restoration, improvement, or operation of the furnace, as well as the statements the witness attributed to them in the dealing he testified they had with Ladd about and on the occasion of the averred sale and purchase of the account, were properly allowed. Of course, if these men were not authorized to bind the defendant in the purchase of the account—a controverted issue—the testimony indicated was without effect.

[6] On redirect examination of plaintiff's witness Ladd these questions were allowed over defendant's objections:

"In reference to assigning the claim after you sold it to Mr. Tison, to this executive committee, state whether or not you did all in reference thereto that any of Tison's servants or agents or attorneys requested you to do. Did you leave anything undone that they asked you to do?"

"Did this executive committee or anybody else write Tison, objecting to the method or manner in which the claim was handled?"

The first question assumed the existence of the relation of agency on the part of the "executive committee" to defendant as principal, and the authority under it to bind defendant in the purchase of the account. It also assumed that the sale of the account was so effectually accomplished as to bind defendant in the premises. It was error to admit the question over the objections in grounds 2 and 3, that an inadmissible conclusion or opinion of the witness was thereby invited.

[7] The second question was also erroneously admitted. The authority of the "executive committee" to bind defendant through this transaction could not be established, in any degree, by the failure or omission of the "committee" or of "anybody else" to write "Tison [i. e., defendant] objecting to the method or manner in which the claim was handled."

For the errors indicated, the judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.