193 So.2d 151

I. Huston CARTER, d/b/a Carter & Co.

v.

C. H. BANKSTON.

1 Div. 92.

Court of Appeals of Alabama.

Dec. 13, 1966.

Mayer W. Perloff, Mobile, for appellant.

Leo Crain, Mobile, for appellee.

JOHNSON, Judge.

This is a combined appeal from a judgment of the Circuit Court of Mobile County for $620.00 in favor of appellee and was based on two separate cases for work and labor done. One of the cases was for $500.00 as damages and the other, for $120.00 as damages.

Appellee is a painting contractor who claims recovery for work and labor done on several houses between July 1, 1963, through November 1, 1963. The amount claimed for the work on the house number one was $500.00. It was located in Alpine Hills. Appellee testified that the work was done for Mr. Carter and at Mr. Carter's request, and that his agreement with Mr. Carter was to paint the entire house; and that he completely painted the house. Appellee testified that Mr. Carter did agree after he performed the work to pay appellee for it; that Mr. Carter approved the work on the house; and that a promise to pay was made several times; that the reason stated by Mr. Carter as to why he did not pay appellee was that "he was pressed a little for money and as soon as he could get his papers cleared through the F. H. A. and get some money, he would pay me;" that appellant never stated that some corporation he owned owed that money; that Mr. Carter admitted in appellee's presence, in open court, under oath, that he owed the money to appellee personally.

Appellee testified that the second claim of $120.00 was for work done on several houses. One house was located on Overlook Road, one on Dog River, and one in Besteda subdivision. Appellee testified that his work on these houses was never finished because the houses were never finished. His testimony as to the reasonable value of his work on the house on Overlook Road was as follows:

"Q. What is a reasonable charge in your opinion, Mr. Bankston, for the work you performed?

\* \* \* \* \* \*

"A. Outside painting for a man who does not belong to a union is about $2.50 per hour.

\* \* \* \* \* \*

"A. The outside painting, by the hour, like I do. I have been trying to get $2.50 and my helper $2.00.

"Q. How much did you pay your helper for the work he performed on the house on Overlook Road?

"A. $12.00.

"Q. How many hours of work did you do personally on that particular house?

"A. About 23 hours altogether.

"Q. Yourself.

"A. Myself and the nigger.

"Q. What in your opinion, would be a fair and reasonable charge for the work you and your helper performed on that house on Overlook Road?

"A. I figured $30.00 for the first coat."

Appellee did some painting on a house on Dog River. He had an agreement with

appellant to paint it—"He [appellant] said to go down there and put a price on it and look it over and start painting and if I agreed on a price like the others, there would be no kick." Appellee testified that a reasonable charge for the work done on the house at Dog River was $40.00, and that appellant owned the house on Dog River.

Some work was done on a house at Besteda Court and appellee was paid at $2.00 per hour for the work on the inside. Appellee didn't know how many hours he worked on the inside. There was an agreement for payment of $50.00 for the outside and the work was accepted by appellant.

The testimony of appellee relates to the question of whether he was working for appellant or for the Mobile Improvement Company:

"Q. Has Mr. Carter ever paid you anything for any work you have performed for him?

"A. Yes he has paid me.

\* \* \* \* \* \*

"Q. Did he pay you by cash or check?

"A. Check.

"Q. On what account were they drawn?

"A. Some on Carter & Company and some on Mobile Improvement Company.

"Q. Who owns Carter & Company?

"A. He does.

"Q. Is it a corporation, or do you know?

"A. Not that I know of.

"Q. How about Mobile Improvement Company, who owns it?

"A. Carter.

"Q. Is it a corporation, or do you know?

"A. They tell me it is, I don't know.

\* \* \* \* \* \*

"Q. Did he tell you that you would be performing this work for him, individually or for the corporation, Mobile Improvement Corporation?

"A. I was doing the work for him, he did not say Mobile Improvement Corporation.

\* \* \* \* \* \*

"Q. Did you have an agreement about—

"A. The only agreement I had with him, I did not want to be worried with too many bosses. He had a young boy out there who was foreman when Carter was not there, but Carter done the bossing and the paying and I said I wanted to do the work and I wanted to work for him and I won't be having so many bosses.

"Q. What did he say?

"A. As long as I agreed with him and did the work right and at the price you been doing it for, we will get along and you can make money."

Appellee, on cross-examination, admitted that he had endorsed some six checks. These checks were all signed by appellant. On five of the checks immediately above his signature was printed the words "Home Improvement Corporation." These five checks were dated August 30, 1963; September 13 and 17, 1963; and October 4 and 11, 1963. One of the checks had the words "Huston Carter" printed immediately above his signature and this check was dated November 15, 1963. This check was plaintiff's Exhibit No. 1.

Mr. Carter testified that appellee had never done any work for him on his personally owned property in Alpine Hills; that he did not own nor never had owned any property in Alpine Hills; that Home Improvement Corporation had a contract to construct a house at Alpine Hills on property owned by Mr. David Cecil Goldman; that he [appellant] was an officer of the Home Improvement Corporation; and that the work was not done for him

personally. He further testified that Home Improvement Corporation did not build a house on Overlook Road but that it had a contract to build a house on Dover Street which runs just off Overlook Road and that appellee had done some work on the house on Dover Street; and that the work was for Home Improvement Corporation. He further testified that appellee never did any work on Dog River, but that it was on Fowl River and it was done for Home Improvement Corporation and not personally for appellant. He further testified that whatever money is owed appellee is owed by Home Improvement Corporation and not by him personally. He further testified that the house in Besteda Court was owned by Home Improvement Corporation and not by him as an individual and that the work on the house was done for Home Improvement Corporation.

Appellant further testified that an employee of Home Improvement Corporation, Mr. Wheat, was the one who first made the agreement for the work with appellee. The only work done for appellant personally was to paint the inside of the house that appellant lived in and appellant paid him with his personal check. This check (plaintiff's Exhibit No. 1) drawn on appellant's own checking account was for $134.00 and was dated November 15, 1963. The following words are written in the bottom left-hand corner of the check, "West Vista Job and 5 Hours on Cornett". Appellant's residence is located at 434 W. Vista Court. The check was for work appellee did on another job and for work on appellant's residence. The six checks entered into evidence did not represent all the money appellee earned, but appellant did not have time to get the others together prior to trial. The reason given for using his personal check to pay for work on the Cornett job was that about that time (November 15, 1963) appellant "closed the Home Improvement Company office and I [appellant] probably gave him that money out of my personal account to help him out" * * *. "I am sure that Home Improvement Company books will show that Houston [sic] Carter loaned Home Improvement Corporation $10.00, which was for five hours paid Mr. Bankston on the Cornett job."

Appellant further testified on cross-examination that:

"Q. Did you have any personal dealings with Mr. Bankston when he was performing this work, or was it all handled through your foreman?

"A. Yes.

"Q. On numerous occasions?

"A. Yes.

"Q. Before this work was started?

"A. I recall talking to him one time on Sunday afternoon before he actually went to work.

"Q. Did he tell you he did not want to be working for anybody but you?

"A. No.

"Q. You always paid him individually, you brought the checks to him?

"A. Either I did it or the foreman did it.

"Q. Did you ever specifically tell him he was not working for you individually, but was working for you as agent or officer of a corporation?

"A. No.

\* \* \* \* \* \*

"Q. Have you, on numerous occasions, after this work was performed, promised to pay Mr. Bankston?

"A. Yes.

"Q. And you have never denied that Mr. Bankston had this money coming to him?

"A. No."

On redirect examination, appellant testified in pertinent part as follows:

"Q. Did you ever acknowledge to Mr. Bankston that you owed this money as an individual Mr. Carter?

"A. No."

Mr. Wheat testified that during the year 1963 until the middle of October he was employed by Home Improvement Corporation and not by appellant as an individual; that he worked as a field superintendent and estimator and was in charge of the jobs the corporation had to do; that while he was employed by Home Improvement Company, he came in contact with appellee and engaged him to do some work for Home Improvement Corporation, and not for appellant as an individual; that the work done in Besteda Court, Alpine Hills, and Dover Street were all jobs of Home Improvement Corporation; that he was not familiar with appellee's connection with the work done on Fowl River; that appellant told him (Mr. Wheat) when he employed him (Mr. Wheat) that he would be working for the corporation and not for him individually; that appellant hired appellee.

■ The plaintiff in a suit on common counts for work done has the burden to show the reasonable value of such services. Birmingham Trussville Iron Co. v. Alabama Title & Trust Co., 25 Ala.App. 58, 140 So. 883, cert. den. 224 Ala. 523, 140 So. 885.

■■ Where the evidence is in dispute, or different inference therefrom may be reasonably drawn, agency vel non, its character and extent, are mixed questions of law and fact to be decided by the jury. Clark & Barber v. Eufaula Brick Works, 205 Ala. 545, 88 So. 669. The question of agency was for the determination of the trial judge since the facts were in dispute and inferences to be drawn therefrom were different.

■ Appellee proved the reasonable value of the work and labor done on the following jobs: Overlook Road—$30.00; Dog River [or Fowl River]—$40.00.

However, the judgment as a whole must be reversed. Wigfield v. Akridge, 207 Ala. 560, 93 So. 612.

Therefore, this cause is due to be and the same is hereby

Reversed and remanded.